IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ANGELA C. FREEMAN, ) | |
| ) | |
| Plaintiff, ) | CV-04-6351-ST |
| ) | |
| v. ) | FINDINGS AND |
| ) | RECOMMENDATION |
| JO ANNE BARNHART, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Angela Freeman ("Freeman"), brings this action pursuant to 42 USC § 405(g) and § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act. For the reasons that follow, the Commissioner's denial should be reversed and this case should be remanded for an immediate award of benefits.

1 - FINDINGS AND RECOMMENDATION

## INTRODUCTION

Freeman applied for SSI on August 13, 2003, alleging disability as of October 30, 2002, based on mental health problems. Tr. 45-46, 90. After her application was denied initially and on reconsideration, she requested a hearing. Tr. 26-29, 32-35. A hearing was held before an ALJ on April 13, 2004. Tr. 868-901. The ALJ issued an unfavorable decesion on June 7, 2004. Tr. 14-22. The Appeals Council denied Freeman's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 4-7.

Born on November 14, 1980, Freeman was 23 years old at the time of the hearing. Tr. 161. Her past work experience was as a caregiver and a fast-food worker. Tr. 53, 180. She completed a GED and attended college for three years, but did not obtain any degree. Tr. 162.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 US 137, 140 (1987); 20 CFR § 416.920.

In step one the Commissioner determines whether a claimant is engaged in "substantial gainful activity." The claimant is not disabled if he or she is able to engage in substantial gainful

activity. *Yuckert*, 482 US at 140; 20 CFR § 416.920(b). Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. Tr. 15, 21.

In step two the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 US at 140-41. An impairment is severe within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 CFR § 416.920(c). If the claimant is not severely impaired within the meaning of the Act, the claimant is not disabled. The ALJ found that Freeman had severe bipolar disorder and a personality disorder. Tr. 15, 21.

In step three the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 US at 140-41; 20 CFR §§ 416.920(a)(4)(iii), 416.920(d). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is conclusively presumed to be disabled. *Yuckert*, 482 US at 141. The ALJ found that Freeman's condition did not meet or equal the requirements of a listed impairment. Tr. 15, 22.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his or her impairments. 20 CFR § 416.920(e), 416.945; Social Security Ruling ("SSR") 96-8p. The ALJ determined that Freeman retained the RFC for work at all exertional levels, but was limited to simple, routine tasks and instructions; only occasional coworker contact; only occasional public contact; and low stress work environment with no production quotas. Tr. 20, 23.

At step four the Commissioner will find the claimant not disabled if he or she retains the RFC to perform work he or she has done in the past. 20 CFR §§ 416.920(a)(4)(iv) & (f). The ALJ found that Freeman had no past relevant work experience and no transferrable skills, rendering this inquiry a non-issue. Tr. 22.

If the adjudication reaches step five, the burden shifts to the Commissioner to show that the claimant can perform a significant number of jobs exist in the national economy. *Yuckert*, 482 US at 141-42; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR § 416.920(f). If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR § 416.966. The ALJ found that, based on her RFC, Freeman could perform work in the national economy existing in significant numbers, specifically a sorter of soft goods, labeler or pricer, and laundry folder. Tr. 21, 22.

Thus, the ALJ found that Freeman was not disabled.

## **STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). If supported by substantial evidence, "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). The Commissioner's decision must be

upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F3d at 1039-40.

# DISCUSSION

## I. Period at Issue

Freeman has submitted an award notice of disability benefits beginning August 1, 2004, resulting from a subsequent and separate application for SSI. Apparently, the award notice is intended to serve as additional evidence that the ALJ erred in concluding that Freeman was not disabled.

Freeman's subsequent award of SSI is irrelevant for this purpose for two reasons. First, the evidentiary basis for the award is not specified. Second, the time period at issue for this case runs from August 17, 2003, through the date of the hearing decision, June 7, 2004, before the period of the subsequent award notice. Accordingly, this court will limit its review to those materials contained within the administrative record filed by the Commissioner.

## II. Treating Physician

Freeman contends that the ALJ erred by rejecting the opinion of her treating physician, Dr. Robert Vandiver, MD, who performed a psychiatric evaluation at the request of her other physicians. Tr. 140-44. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1996). However, when the opinion of a treating or examining physician is contradicted in the record, it can be rejected with "specific and legitimate reasons." *Id*. The "specific and legitimate" standard applies here because Dr. Vandiver's opinion was contradicted

by reviewing state agency medical experts who concluded that Freeman had fewer functional limitations. Tr. 127.

On March 8, 2004, Dr. Vandiver diagnosed Freeman as suffering from Bipolar Disorder Type I, with mood congruent psychosis, post traumatic stress disorder, and obsessive compulsive traits. Tr. 141. He rated her global assessment of functioning ("GAF") at 32. *Id*. A GAF of 31 to 40 indicates "some impairment in reality testing . . . or major impairment in several areas such as work or school, family relations, judgment, thinking or mood . . ." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision) 34 (4th ed 2000). Dr. Vandiver also took note of Freeman's report of occasional hallucinations, suicidal ideation, and concentration deficits. Tr. 141, 147.

On April 28, 2004, Dr. Vandiver completed a Rating of Impairment Severity Report, checking boxes that Freeman was moderately impaired in daily activities, social function, concentration, persistence and pace, with four or more episodes of decompensation. Tr. 147-48. He noted that Freeman's prognosis was "guarded," but commented that since he had only seen her twice, his information was "limited." Tr. 148.

Later on May 18, 2004, in response to an inquiry from Freeman's attorney to clarify the differences between his two earlier opinions, Dr. Vandiver stated that despite her GAF of 32 which reflects "psychotic symptoms," Freeman was "still competent to some extent and not gravely disabled." Tr. 150. He also stated that he was of a "mixed mind" and did not have a "firm opinion" concerning her ability to sustain focus or concentration for more than two hours "partly because [he had] only seen her twice," but "with her reported symptoms I doubt that she can 'sustain focus or concentration.'" *Id*.

The ALJ gave Dr. Vandiver's "very little weight as he is not giving his own opinions based on his medical knowledge an expertise but parrots [Freeman] such as finding moderate problems with concentration because this is what [Freeman] described." Tr. 18.

Freeman argues that the ALJ erred by rejecting Dr. Vandiver's opinion, specifically his GAF score of 32 which suggests severe psychosis. This court agrees. The ALJ gave Dr. Vandiver's opinion "very little weight" based on a lack of objective clinical signs or laboratory diagnostic studies corroborating his diagnosis. However, Dr. Vandiver not only relied on Freeman's reported symptoms, but also on his observations of her behavior. For example, when performing a mental status examination, he specifically noted that Freeman's thought process was ruminative and digressive. Tr. 142.

Furthermore, all the physicians who have treated Freeman or reviewed her medical records agree that she suffers from a severe bipolar disorder and related mental health problems. Dr. Vandiver's opinion is consistent with the results from a psychological evaluation administered by Dr. Stephen Brennan on August 8, 2003 (Tr. 96), and with the observations and diagnosis of Dr. Timothy McCarley who examined and treated Freeman from April through July 2003. Tr. 98, 101, 106-07, 111-12. There is no dispute that Freeman suffers from severe mental health problems as a result of her bipolar disorder, resulting in episodes of decompensation and the need to often change medications.

As the ALJ noted, Dr. Vandiver accepted Freeman's subjective report that she cannot sustain concentration for more than two hours which would prohibit her from working 40 hours a week. However, a patient's subjective testimony is a perfectly legitimate source of information for a treating physician, especially in the realm of a mental impairment. The critical issue is the

7 - FINDINGS AND RECOMMENDATION

credibility of a patient which is subject to separate scrutiny.  The medical records contain no evidence to suggest that Freeman was not a credible reporter and, as discussed next, the record does not support the ALJ in discounting Freeman's credibility.  Hence, the ALJ lacked a sufficient basis to reject Dr. Vandiver's opinion premised on Freeman's reporting of her symptoms.

Where an ALJ fails to provide adequate reasons for rejecting the opinion of a treating physician, the court may credit the testimony of the physician as a matter of law.  *Lester*, 81 F3d at 830.  Based the ALJ gave an inadequate reason for rejecting Dr. Vandiver's opinion, that opinion may be credited.

## II.     Claimant's Credibility

Freeman testified that her bipolar symptoms are so severe that when she is suffering a "low," which occurs at least two to three times a month, she "can't move" and "can't even get out of bed" for a couple of days.  Tr. 167-68.  "A lot of times I feel like I just lay there and never move again and I'm really, really depressed even when able to get out of bed."  Tr. 167.  She has difficulty reading and cannot do math without a calculator.  Tr. 163.  She also cannot concentrate and is afraid of people.  Tr. 169-70.  If accepted at face value, this testimony would establish disability, a fact noted by the vocational expert at the hearing.  Tr 182; *see also* SSR 96-8, *available at* 1996 WL 374184.

The ALJ found Freeman to be "not entirely credible in her report of the severity of her symptoms or statement of limitations."  Tr. 19.  Once a claimant establishes the existence of an impairment and a causal relationship between the impairment and some level of symptoms, the ALJ must provide clear and convincing reasons for rejecting a claimant's subjective claims.

*Morgan v. Comm'r of Social Sec. Admin.*, 169 F3d 595, 599 (9th Cir 1999). If an ALJ finds that a claimant's testimony relating to the intensity of pain and other limitations is unreliable, then the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F2d 341, 345-46 (9th Cir 1991). Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. *Yuckert v. Bowen*, 841 F2d 303, 307 (9th Cir 1988); *Sample v. Schweiker*, 694 F2d 639, 642 (9th Cir 1982).

In assessing a claimant's credibility the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. *Smolen v. Chater*, 80 F3d 1273, 1284 (9th Cir 1996).

The ALJ offered several reasons for rejecting Freeman's testimony. None satisfy the requisite "clear and convincing standard."

The ALJ vaguely noted a "lack of medical evidence" corroborating Freeman's testimony. Tr. 20. However, as explained above, this conclusion inappropriately disregards Dr. Vandiver's opinion.

The ALJ expressed doubt with regard to Freeman's description of being drugged and raped at a party, noting that the examiners observed her report to be delivered "casually,"

(Tr.110), thereby implying that her report was not truthful. Tr 19. However, it could just as easily imply that her thought processes are abnormal or support the examiner's conclusion that her "affect and mood are incongruent." Tr. 111. To give meaning to one adjective out of an examiner's report which is not further explained by the examiner falls short of the clear and convincing standard. Furthermore, this was a date-rape by a male companion, not a violent rape by a stranger. Tr. 94.

The ALJ found inconsistencies in Freeman's reporting to Dr. McCarley. Tr 16-17. This is incorrect. The ALJ notes that Freeman called Dr. McCarley on June 5, 2003, to report problems with her medication and that on July 22, 2003, she reported to Dr. McCarley that she had stopped using her medication a day or two prior to her last office visit. Tr 17. The ALJ intimates that because her last office visit had been on March 19, 2003, she therefore must have stopped using her medication a few days following that date and thus could not have been experiencing bad side effects on June 5, 2003. *Id.* However, the ALJ overlooked Freeman's June 18, 2003 office visit. Tr. 101. If Freeman stopped taking her medication after June 18, 2003, it is apparent that she *was* taking her medication on June 5, 2003. Therefore, there is no inconsistency in this testimony.

The ALJ also discredited Freeman's testimony because she characterized quitting her job as a caregiver as a "breakdown." Tr 19. This misconstrues the record. Freeman testified that she quit her job, then suffered "a large breakdown." Tr 46. Nothing about this remark diminishes Freeman's credibility.

The ALJ noted that reviewing state agency physicians found Freeman to have "secondary gain for being unstable in that she gets to live at home with little or no responsibilities." Tr 19.

10 - FINDINGS AND RECOMMENDATION

This is unpersuasive.  Freeman moved home only after she had a breakdown and could no longer work.  Furthermore, after she moved home, her mother apparently lost her job and they both became homeless.  Tr. 171.  Besides, it is axiomatic that Social Security claimants, as a class, are motivated by financial need.

The ALJ doubted Freeman's reports that she check door locks obsessively, finding this inconsistent with her claim to be homeless and living in her car.  *Id.*  This is not inconsistent.  Car doors do, of course, have locks, just as houses do.  Furthermore, a review of Freeman's testimony suggests that she was speaking in general terms, which included her experiences prior to becoming homeless.

The ALJ further discredited Freeman's testimony because her social security application states that she completed one year of college,[1] yet she told Dr. Vandiver she completed three years of college.  Tr 17.  The ALJ misconstrued the record.  Freeman did attend college for three years, but the number of credits she earned amounted to completion of only one year.  Tr 162.  Thus, her statements are not inconsistent.

In a particularly strained effort, the ALJ expressed doubt about Freeman's statement that she tries to avoid drinking alcohol, but claims not to be an alcoholic, calling this an "inconsistency," and opining that "if [Freeman] does not want to drink and is not addicted there would be no problem in simply not drinking."  *Id.*  This reasoning is inadequate.  Freeman stated that she avoids drugs and alcohol because of the problems her family members have had with substance abuse.  Tr. 142.

---

[1] It is noteworthy that the social security application specifically asks for "the highest grade of school completed."

The ALJ also noted that Freeman failed to regularly take her required medications. Tr. 19. Freeman acknowledges as much, explaining to Dr. McCarley on July 22, 2003, that she quit taking her medication because "I just decided I want to get better on my own." Tr. 98. However, as Dr. McCarley advised Freeman, she needed to engage in consistent treatment over a period of time. *Id*. The evidence in the record that thereafter, Freeman made efforts to comply with her treatment plan.

Because the reasons used to discredit Freeman by the ALJ do not rise to the clear and convincing standard, Freeman's testimony is credited as true. *Lester*, 81 F3d at 834.

### III. Lay Testimony

Freeman argues that the ALJ erred by rejecting the testimony of her mother, Barbara Moss, who testified about the nature of Freeman's symptoms. This is not exactly so. The ALJ took note of Moss's testimony, particular her indication that Freeman's symptoms improve when she adheres to her prescribed treatment.

It is noteworthy, however, that Ms. Moss's testimony in regard to Freeman's symptoms is consistent with Freeman's testimony and with the diagnoses of Dr. Vandiver, Dr. Brennan, and Dr. McCarley, and to that extent, should be credited.

### IV. Disability

Freeman asks the court to reverse the ALJ's determination, find her disabled, and remand this case for an award of benefits. Remand for award of benefits is appropriate where: (1) the ALJ failed to give legally sufficient reasons for rejecting evidence; (2) no outstanding issues remain; (3) it is clear that the ALJ would be required to award benefits when the improperly

rejected evidence is credited. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert denied*, 531 US 1038 (2000).

Having credited Freeman's testimony and that of Dr. Vandiver in regard to the severity of her symptoms, it is clear that she is disabled. The testimony of the VE establishes that, under the social security regulations, there is no work that she can perform. Tr. 182. Because no outstanding issues remain, Freeman should be entitled to an award of disability benefits.

## RECOMMENDATION

For the reasons set forth above, the Commissioner's decision should be reversed and this case should be remanded for an immediate award of benefits.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due September 23, 2005. If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 2nd day of September, 2005.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge